May it please the Court, David Gauntlett for Appellant Street Surfing. I'd like to reserve five minutes for rebuttal. Your Honor, I think this case can be fairly disposed of by focusing on the truth facts in light of the true applicable legal standard under California law. The District Court jumped to the first publication exclusion without clarifying what the basis for coverage was. That was a mistake because the words personal and advertising injury are a component of the definition of the first publication exclusion. And thus they needed to be satisfied. It's conceded that offense F, use of another's advertising idea in your advertisement is met. But why? It's not the idea. The advertising idea is the ability to combine the modality of surfing and do it on the street. They're bigger wheels. They're safer. They're more economical. They're able to have a experience in using the street surfing product, which is the wave, in a way that allows a different sport. Now, that wasn't evident initially. What was evident initially was that they had a patented from Korea invention that was the next step in the evolution of the skateboard, and that they believed had market potential. And so they referenced the wave as a product emanating from the entity street surfing. However, after the inception of the policy, following August 22nd of 2005, there was a recognition that there was a market growing among folks like snowboarders who were excited by some of the features of this particular product. And that's when they started describing what street surfing for the first time was up to as critically a new sport. And they called it the ultimate new sport. And this is critical because you'll see that the Declaration of De Soto, the declarance upon which the carriers rely, concedes that after the inception of the first policy was the first time that there was a statement about the aspects of this street surfing product that were unique. And what was unique was it was a combination of snowboarding, skateboarding, and surfing, the ultimate new sport. And that occurs, and if you look at the 302, it's also the case that that exhibit was a reference to the materials in our 12-108 letter to the carrier, advising them of why there was extrinsic evidence showing a fresh wrong. Now, the initial denial letter did not reference this particular piece. I'm losing the thread a little bit because I try to figure out, okay, what's the complaint that is supposed to trigger coverage here? And I look at the complaint, and it says it's trademark infringement. Street surfing, street surfer, what's the difference? I'm not saying there's validity in the complaint. I'm saying that's what appears to be the complaint. That's what the district court did, and that's error. Well, that's, I look at it, I see the same thing. So what's wrong with it? I'm missing the third count for relief for unfair competition and false designation of origin, as the district court did, too. The one thing you can go out to the bank to find. Give me a long description of new sport. I'm looking at something that says street surfing, street surfer. It's the same. What's the claim? The claim is unfair competition because of consumer confusion, as articulated in the third count. Point to me something in the third count that relates to all that you were telling me about a new sport. Because I look at the third count. That is not stated in the complaint. What is stated in the complaint in the second claim for relief, unfair competition and false designation of origin, it talks about conduct with respect to the use of the street surfing logo on skateboards and related products, as alleged constitutes the use in Congress of a symbol, very similar to a slogan, or a false designation of origin, which is likely to cause confusion or could cause mistake or deceive as to affiliation, connection or association of defendants with plaintiff as to the origin, sponsorship or approval of defendants' products or commercial activities by a plaintiff. Now, in California, it's the inferences from the facts and, per the Scottsdale DMV transportation case from the California Supreme Court in 05, the potential for amendment. What we clarified by the intrinsic evidence that we put before the carrier. What point were you reading from? I was reading from paragraph 33 of the second claim for relief. There's an exclusion for trademark infringement. So the one thing you can go to the bank on is there couldn't have been coverage for the trademark. There's a difference between infringement, which is misappropriation, and use that deceives the public as to the nature of a particular product. It is the latter that is a basis for coverage. Since the district court ignored what the basis for coverage was, it didn't do the proper analysis simply thinking that this is a mere trademark claim. If it was a trademark claim, we'd never have coverage under Offense F. The reason that the carrier agreed to finesse the coverage under F is it didn't want the court to look too carefully at the nature for coverage. It did say, well, gee, slogan infringement, that's not implicated because this isn't a slogan. But if you look at what the definition of the slogan is in Palmer in 1999 and Interstate Bakeries, which adopt the same definition by the Eighth Circuit, nature's own is a slogan. The wearable light is a slogan, according to the Sixth Circuit applying it. Well, how does any of this relate to the exclusion that the district court decided did apply, the prior publication exclusion? The exclusion only applies based on what the coverage is. And the court misperceived what the coverage is. It assumed it was coverage for trademark infringement. We can't have coverage for trademark infringement. We can have coverage for infringement of slogan. We can have coverage for use of an advertising idea in our advertisement. And those emanate from the unfair competition claims. And as the Waller v. Truck case says, why doesn't the prior publication exclusion apply to all of these theories of coverage? Because if you look very carefully at Taco Bell, which the court did not, that's a common law misappropriation theory of relief. Let me stop you. Because all of these things are bouncing right off of me. I'm at the same point maybe the district court was. Street surfers coming in and saying, hey, you're swiping street surfer. You're calling yourself street surfing. It's the same thing. And that was clearly on the table before the policy began. And I think that's how the district court disposed of the case. And I'm not sure why that's wrong. Because it looked at a claim for relief that couldn't have given coverage in the first instance. There's no coverage for trademark infringement. Well, who cares? Because the policy exclusion says personal or advertising injury in quotes first. You have to figure out what the coverage is. And Waller says you look at the coverage first before you get to the exclusion. And if you look at Taco Bell, it's a common law misappropriation case, which is analogous to ours because they're very nuanced ideas. It is not that we misappropriated a name. That's not the bad act for which coverage arises that we're seeking to apply the exclusion to. The bad act that you look at is whether there's confusion as to source, sponsorship, and the nature of what the product communicates to the public about what this product does. That's a different claim. It is a claim the court didn't analyze. If you look at that claim, it's right on the money with Taco Bell. There's also been over half a dozen cases that have clarified how this policy works. If you look at the MGA case. Well, I took Taco Bell to focus on the different use of the chihuahua, the popping through at the end. Right. What's different here? The difference is the first time we learned that there's a difference between using the name street surfing and a logo and explaining what it means to be engaged in street surfing is by that advertisement that I brought to your attention, which is first launch post policy inception. You have to have an injurious advertisement to be a qualifying prior publication, according to Maddox. And that earlier advertisement wasn't an advertisement that falls within use of another's advertising idea in your advertisement. It merely advertised the product, the wave. It didn't say what the wave did for you, how it would make you feel, what it was like. Where in Noel's complaint is the discussion of how it makes you feel? That is implicit in the Affiliation Connection Association sponsorship approval allegations that are part and parcel of the unfair competition count. You have to infer. I don't see it. I see it. Give us the paragraphs. Paragraph 33 and paragraph 34. Plaintiff has suffered in most cases. Second amended complaint? Of the first amendment, of the original complaint. I thought you said second. No, I did not. Well, hold on a second. But the same allegations live through all the different complaints. Slow down. Slow down. We'll give you the time. No point. Okay. So you're on 33. Right. All right. It's 82 of the record. And so if you look at unfair competition, we have a very similar scenario to what happened in Taco Bell. The court focused on trademark infringement, which is meaningless because you can't have coverage of trademark. And so, yes, there's an – all the court said is I perceive a possibility that this case could proceed to trial and there would be no indemnification for trademark infringement claims. Wonderful. Thank you for sharing, but that's not the legal test. The legal test is whether there's any potential in one possible world for coverage that they can exclude by virtue of their exclusion, which must apply in all possible worlds. It doesn't apply to the possible world where there are unfair competition allegations which were clarified by the advertising conduct that their claims representative relied upon. And what he was saying is that year two, there can't be coverage because this advertisement about this combination element of snowboarding and surfboarding, et cetera, was known to the carrier. But that has no application. I don't see it in this complaint, and I don't see it in paragraph 33. It doesn't have to be in the complaint. We're in California. Extrinsic evidence that clarifies inferences or complaints that evidence is a potential for amendment is sufficient. And moreover, that extrinsic evidence was known to the carrier and was relied upon by the claimant as a basis for asserting liability. Okay. What extrinsic evidence are you talking about now? I'm talking about the advertisements that are attached to the De Soto Declaration that are also attached to our Letter of 12-108 that explain why there was a fresh wrong within the meaning of the policy. The lime green wheels. Yeah, the lime green wheels are part and parcel of that. And the other thing that's important is the following year, they first used the term street surfer, and street surfer is a different term than street surfing. It talks about the actor. It places one in the role of one who is using this new ultimate sport. It's very different to have the advertising idea called, for our product, the Wave, we use the logo street surfing, and then to have an explanation subsequently of what it means to be a street surfer and to discuss the new ultimate sport of street surfing. And those allegations, and the allegations are informed by that extrinsic evidence that give flesh to the notion of what it means to have suffered injury and damage to business apart from mere misappropriation of a trademark under a theory of unfair competition. And so these are subordinate ideas, like the Chihuahua poking his head out from under the door. And if you look carefully at the MGA case and the JAR Laboratories case, they said, you know, yeah, there may have been some general allegations of some connectivity before, but they weren't specific enough. What became specific was the later articulation of the basis for the advertising activity and that that created possible coverage. But what the carriers want you to do is ignore the second claim for relief, which has the basis because it's about consumer confusion, and the consumer is only confused based on what the advertising tells is an available basis for liability. I think I'm getting into my time, so I probably should reserve, Your Honor. Okay. You may. And we'll hear from counsel for the insurance carrier. Good morning. May it please the Court, Linda Morrison for Great American A&S Insurance. Your Honor, I'm going to try not to duplicate the arguments that are contained in our brief, but there are several points that I do want to respond to, the first one being this distinction between trademark infringement and unfair competition. And we do address this in our brief, but under Vandenberg's Supreme Court authority, in evaluating coverage, an insurer must look at the facts that are alleged and not simply the labels that are attached to the facts for purposes of making a cause of action. Here, quite simply, the Knoll action alleges that street surfing infringed upon Mr. Knoll's registered mark, which was street surfer. That is the allegation. That forms the basis of the claims. And there are courts that have rejected the argument that an intellectual property exclusion that excludes coverage for trademark infringement does not apply to unfair competition. And we cite those cases in our briefs as well. That's industrial indemnity versus Apple computer, and then also the uncommon case. The other issue, which I think is important, is to have some clarity on this prior publication issue, the fresh wrongs and the Taco Bell case and what's alleged and what the appropriate test is. Because street surfing alleges that because there were fresh wrongs that occurred during the great American policy period, that somehow the prior publication exclusion does not apply. And it relies upon the Taco Bell case, but the Taco Bell case is inapplicable here because there are no fresh wrongs alleged in the Knoll action. The Knoll action simply alleged infringement of the street surfer mark. And in the Taco Bell case, what you had was the underlying claimant who had this marketing idea, this campaign idea about this feisty chihuahua and different marketing concepts. For example, one was a boy chihuahua passing up a girl chihuahua in favor of Taco Bell. Another one was a bobblehead chihuahua. Also a chihuahua popping his head out through a hole at the end of the commercial. And these were alleged to be very distinct marketing ideas that Taco Bell had infringed or had appropriated in different commercials. So there were different wrongs that were alleged in that underlying complaint to have been committed by Taco Bell. Here we don't have multiple acts of infringement. Did Taco Bell go off on the use of, I forget what the phrase was. The advertising idea. Well, I'm trying to remember what the, it's a Spanish term. It just went out of my head. But it was essentially an infringement case, was it not? It was a case where there are these marketing ideas. And these ideas were pitched to Taco Bell. And Taco Bell is alleged to then have appropriated those ideas, to have misappropriated those ideas. Go ahead. I'll find what I'm looking for. And so the fresh wrongs, when you're looking at whether there are fresh wrongs, you don't look at it from the perspective of whether the insured, in our case, whether Street Surfing had decided, well, we're going to market lime green wheels now, or we're going to use a different product now to infringe upon the mark. What you're looking at are the allegations and the underlying complaint and the NOL action, and whether Mr. NOL is alleging that Street Surfing has infringed upon its multiple ideas or multiple trademarks. And clearly, it is only the Street Surfer mark that is alleged to have been infringed. And the California Court of Appeal in the Kim-Tsang case addressed this very specific issue and said in that case it distinguished Taco Bell because it said that the claimant is only alleging that its one mark has been infringed. And I apologize if I mispronounced this, the Kyu-Hwang mark. And it was just one mark that was alleged to have been infringed upon in several different ways. And just recently, and we provided this case in our supplemental authority, Hanover v. Urban Outfitters, a federal court, also followed Kim-Tsang with the same type of reasoning. So based upon the fact that here we're dealing with a situation that's analogous to Kim-Tsang and that can be easily distinguished from Taco Bell. That's the case I was thinking of. It was relying on Taco Bell. And it was, and it wasn't Spanish. Well, maybe it wasn't Spanish. Kyu-Hwang, sort of the Korean with the Spanish attached to it. But that was a trademark infringement used under the words Kyu-Hwang. Yes, sir. All right. Okay. So they've conceded that if this is a trademark infringement case, they don't have any coverage. Correct? In this case. That's what counsel has alleged here. Counsel. Okay. So they're arguing that its use of the, I understand the slogan one, but looking at the coverage F, which would be the use of another's advertising idea in your advertisement, that's not an infringement case, is it? I'm sorry. What's not an infringement case? In other words, they're trying to come under use of another's advertising idea in your advertisement. That's what they're trying to come under here. Street surfing has alleged that F. Okay. And then they're looking at the allegations of the null complaint and saying that there is an advertising idea here that isn't tied to the trademark. Well, the null complaint does not allege any type of misappropriation of an advertising idea that's not tied to a trademark. Well, that's what he's trying to read into paragraph 33. Why doesn't it work? Because you have to look at the facts of the complaint as alleged, as we're required to do, and that's a complaint for trademark infringement. And even if there are other labels that apply. That's your point, that everything in the null complaint is a trademark infringement claim. Well, even if this is use of another's advertising idea in your advertisement, the prior publication exclusion would apply. And there are probably several other points I could address. However, this is all contained in our briefs. If the Court has any questions, I'd be happy to answer them. Okay. Fairly not. Thank you. Thank you. Rebuttal. So, again, if you look at the exclusion, it first has the words personal advertising injury in quotes, which means you first have to establish what's covered. As to extrinsic evidence point, Scottsdale v. N.B. Trance says the defense arises when the facts alleged, reasonably inferable or otherwise known, the complaint could be fairly amended to state a covered liability. We have unfair competition. It's a very diffuse, consumer, confusion-oriented claim. And, yes, street surfing's logo is part and parcel of that, but it's how it is associated in the public mind with what use is made. And the street surfer, the plaintiff, the underlying action, does it use any technology or technique or anything similar to the wave technology that came from Korea? That's not evident in the complaint, Your Honor. So I'm trying to figure out what it is that can be inferred from the complaint that they could be briefing about. What could be inferred from the complaint under the unfair competition claims is that there is a concern over any association, sponsorship, or affiliation between the words street surfing, which allegedly are too close to the phrase street surfer, that create liability. And here, when the extrinsic evidence is taken into account, as it was in Elkhorn Harbor in 2001 and in numerous cases in California, it clarifies that part of the objectionable conduct, assuming a trademark did not live because it was invalid or not infringed, it's an alternative count for unfair competition, it would support a finding that the use of the phrase street surfing in year one, in connection with this new ultimate sport designation, caused loss and injury to the claimant because consumers would think that they were associated with that usage. And anything that causes the claimant to lose because of the association How does the claimant lose because your client has developed a new sport? Because people will think that it is affiliated with them, but it's not getting revenue and it has no products to sell that are similar in character to the ones out there. It doesn't have the products, then it hasn't lost anything. The loss comes from somebody thinking I'm getting a surf, street surfer product, only I'm actually getting somebody else's product. That happens to be this new sport and so forth, but I don't see how that's an injury to street surfer. Well, you can get damages in an unfair competition claim because the marketplace has been mucked up by a competitor having a space that they're not allowed to possess. The mucking up comes entirely from the name, not from the new sport or the new technology. It comes from the way the name is used to associate with products that people think you either have association with or had some sponsorship. Let's say a kid was injured using this new product and people assumed that street surfer was the source of origin. They could have... And the problem is because of the name, not because of the technology that caused the injury. I mean, skateboards cause injury, period. Yeah, but that's like saying the problem in Taco Bell is because they were using the same advertising campaign of the psycho chihuahua. It's more complex, it's more nuanced. You look at the sub-elements that are distinct episodes to decide whether there's... It's a very multi-layered kind of understanding because unfair competition is not simply understood as one particular name used again and again. It's understood because of the consumer's misperception of the association between, yes, the use of that name, but the use of that name with products that call the attention of the public to how they would be used. And so if you think this ultimate new sport emanates from street surfer, you may have views about street surfer that could cause an injury. In other words, they would have people no longer feel that street surfer, whatever products, whatever capitalization it's making from the street surfer name, is not a trusted resource. It would disparage it, defame it in the public. Those are all forms of unfair competition. It is not this straightforward thing. Take a look at MGA. It is a very intriguing case. The Court denied reconsideration. And it's at 2013 WL4038660. And it's talked about how Taco Bell, the material was considered published when the material was first distributed widely to the public. And the reason it made that distinction is because it was pointing out that there was a very... You had to show all elements. You had to show there was advertising before. You had to show liability before. And in that case, it was a more diffuse scenario, more like what we have here. And if you look at the dissoded declaration... I think we have your argument here over time. We thank you and both counsel for your arguments that were helpful. The case just argued is submitted.
judges: Goodwin, Fisher, Clifton